UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Thomas Sutliffe et al.

    v.                                  Civil No. 06-cv-474-JL
                                          Opinion No. 2008 DNH 076

Epping School District et al.

**O R D E R**

The defendants, who include municipal agencies, officials, and employees of the town of Epping, New Hampshire, have moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the bulk of the plaintiffs' second amended complaint, which alleges violations of their constitutional rights to free speech and equal protection. The defendants argue that the plaintiffs' claims are, variously, barred by res judicata, collateral and judicial estoppel, the Rooker-Feldman doctrine,[1] and the statute of limitations; have been brought by parties without standing; are not ripe; and fail to state a claim for relief.

---

[1] See Rooker v. Fidelity Trust Co., 236 U.S. 413 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

Except as to those claims by plaintiffs who, as discussed infra, lack standing, this court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The court heard oral argument on the motions to dismiss on March 25, 2008.  For the reasons stated below, the motions are granted, except insofar as they seek dismissal of the claim that the Epping selectmen wrongfully required the plaintiff organization to disclose certain information about its membership and finances before the selectmen would consider allowing the organization to place a link to its website on the town's homepage.[2]

## **Applicable Legal Standard**

Under Rule 12(b)(6), "[a] complaint should not be dismissed unless it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Stanton v. Metro Corp., 438 F.3d 119, 123-24 (1st Cir. 2006) (internal quotation marks omitted).  In ruling on a motion to dismiss, the court must accept the well-pleaded factual

---

[2]  This claim is alleged in paragraphs 55-60 of the second amended complaint.

allegations of the complaint as true, drawing all reasonable

inferences in the plaintiff's favor.  Id. at 123.

Although res judicata, collateral and judicial estoppel, and

the statute of limitations are affirmative defenses, they may be

adjudicated on a motion to dismiss under Rule 12(b)(6).[3]  See,

e.g., In re Sonus Networks, Inc. Shareholder Deriv. Litig., 499

F.3d 47, 56 (1st Cir. 2007) (collateral estoppel); Edes v.

Verizon Comm'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005) (statute

of limitations); Banco Satander de P.R. v. Lopez-Stubbe (In re

Colonial Mtg. Bankers Corp.), 324 F.3d 12, 15-16 (1st Cir. 2003)

(res judicata); Payless Wholesale Distribs. v. Alberto Culver

(P.R.), Inc., 989 F.3d 570, 571 (1st Cir. 1993) (judicial

estoppel).  Consistent with Rule 12(b)(6) standards, however,

dismissal can occur only when facts that "conclusively establish

---

[3] A request for dismissal for lack of standing presents a
question of federal subject-matter jurisdiction, placing the
burden on the plaintiff to show that jurisdiction in fact exists;
in assessing such a request at the pleadings stage, however, the
liberal standards of Rule 12(b) apply.  See infra Part I.A
(standing).  Rooker-Feldman works the same way.  See Federacion
de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.,
410 F.3d 17, 20 (1st Cir. 2005).  In assessing a challenge to
subject-matter jurisdiction based on ripeness--where the
plaintiff also bears the burden--the truth of his factual
allegations is not presumed.  See Coal. for Sustainable Res.,
Inc. v. U.S. Forest Serv., 295 F.3d 1244, 1249 (10th Cir. 2001).

the affirmative defense" are "definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, or other matters of which the court may take judicial notice," including the records of prior judicial proceedings.  In re Colonial Mtg., 324 F.3d at 16.

**BACKGROUND**

Plaintiff Thomas Sutliffe serves as the chairman of plaintiff organization Epping Residents for Principled Government, Inc. ("ERPG"), a self-described "perennial thorn in [the town's] side opposing its profligate spending."  The plaintiffs occupy one side of an "ongoing political debate" with local officials over municipal spending.  The plaintiffs take exception to the officials' using taxpayer-funded mailings and other communications to argue their side of the debate, while allegedly denying the plaintiffs access to those materials to present their dissenting views.

In advance of the 2005 town election, Sutliffe, on behalf of ERPG, complained to both the board of selectmen and the school board about publicly funded communications disseminated in connection with the prior year's vote, demanding that an

4

equivalent "opportunity be afforded to those residents who hold a different point of view on matters advocated by [the] Board[s]" (internal quotation marks omitted).  When the boards refused to comply, Sutliffe and ERPG (the "state-court plaintiffs") sued them, and their chairmen (the "state-court defendants"), in Rockingham County Superior Court.

The state-court petition, filed pro se, alleged that the school board had deprived ERPG of an opportunity to express its views in mailings sent during the prior month, as well as "numerous fliers sent home with the students."  As an exhibit to the petition, the state-court plaintiffs attached a letter they had written to the school board complaining about materials they found objectionable in this regard, including the elementary school newsletter Cool News, which allegedly "advertised and sought to advance the political agenda of a private organization called The Advocates," together with "other one-sided political bulletins" distributed via the students and the mails.[4]  The state-court plaintiffs also charged that the chairman of the

---

[4]  This letter, and a similar one from the state-court plaintiffs to the board of selectmen also attached to the petition, charged that such "abuse of public resources . . . is pervasive; one might even say of epidemic proportions" among the town government and the school district.

school board and the police chief had illegally used the town's
2004 annual report to urge support for particular warrant
articles at issue in the upcoming election.  In its amended form,
the petition claimed, *inter alia*, that this report, and its 2003
counterpart, violated the state and federal constitutions due to
"unwarranted advocacy from a particular result on a particular
warrant article," and sought a declaratory judgment to that
effect and an injunction against the practice.

The superior court held a bench trial on the state-court
plaintiffs' claims on June 1, 2005.  In support of their
position, the state-court plaintiffs submitted a packet of
documents, including:  copies of the <u>Cool News</u> newsletter from
February and March 2004; a mailing from the school board about
the 2005-2006 school budget and certain warrant articles, sent
just in advance of the 2005 election; photographs showing that
blueprints and a model of a school addition up for consideration
in the 2005 election had been placed at the polls; and a mailing
from the board of the selectmen in advance of the 2004 election
about warrant articles then up for consideration.

Though the superior court accepted these exhibits, it
expressed concern about an "open-ended" proceeding where "every

time someone sends out a letter, I have to decide." The court

therefore announced that "the only thing I am going to decide is

whether the material referenced in your original petition is

legal; is legal or illegal to send that out. That's my

determination." In response, the state-court plaintiffs

explained that the exhibits were intended as

> some background basically on what transpired,
> because this all started in the year 2004. And in
> 2005, we were determined to ask that we be allowed
> to show opposing views . . . . We were denied
> that at all angles from the selectmen, the school
> committee, from any other planning board or
> conservation commission.

While the superior court "underst[ood] [this] position," it

reiterated, "I am only going to address the denials that are

contained in your petition." The state-court plaintiffs did not

further object to this limitation or seek to amend their petition

to seek relief from the additional communications.

The superior court issued a written order denying what it

construed as the state-court plaintiffs' requests for relief as

set forth in their amended petition. <u>Epping Residents for

Principled Gov't, Inc. v. Epping Sch. Bd.</u>, slip op. at 1, No. 05-

E-0094 (N.H. Super. Ct. June 15, 2005) ("<u>Superior Court Order</u>").

The court concluded that "the First Amendment does not prevent

the School Board Chairman or the Police Chief from urging support for their governmental proposals in the Town and School Annual Report," id. at 5, because "the United States Supreme Court has made it clear that the government may use public funds to endorse its own measures," id. at 4 (citing Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550 (2005)).  The court also rejected the claim that the school board had violated the state-court plaintiffs' right to equal protection "by failing to publish opposing viewpoints in the annual report and other mailings," noting that they had "not presented evidence sufficient to demonstrate that the School Board impermissibly established classifications and therefore treated similarly situated individuals in a different manner."  Id. at 5 (internal quotation marks omitted).

The state-court plaintiffs, still proceeding pro se, appealed the superior court's decision to the New Hampshire Supreme Court, which affirmed in an unpublished opinion.  Epping Residents for Principled Gov't, Inc. v. Epping Sch. Bd., slip op., No. 2005-600 (N.H. Oct. 6, 2006) ("Supreme Court Opinion").  First, the supreme court declined the state-court plaintiffs' request "to rule upon numerous statements by the [state-court defendants] upon which the trial court did not," invoking the

"long-standing rule that parties may not have review of matters
not raised in the forum of trial." Id. at 3. Observing that
"the only statements upon which the trial court ruled were the
statements made in the 2004 Town and School Annual Report," the
supreme court explained, "If the [state-court plaintiffs]
believed the trial court erred by confining its review . . . ,
[they] should have raised this argument to the trial court in a
motion for reconsideration."[5] Id. at 3-4. The supreme court
further observed that the state-court plaintiffs' pro se status
below did not excuse their failure to take this step.[6] Id. at 4.

Second, the supreme court noted that the state-court
plaintiffs had conceded at oral argument before it that the
challenged statements in the 2004 annual report were permissible;
while maintaining that the other communications--on which the
superior court had declined to rule--were unconstitutional, the
state-court plaintiffs had acknowledged that the state defendants

---

[5] Though the state-court plaintiffs had filed a motion for
reconsideration with the superior court, they failed to include
it in the record on appeal, Supreme Court Opinion at 4, but, in
any event, the motion did not argue that the superior court had
erred by confining its review to the statements in the 2004
annual report.

[6]  The state-court plaintiffs had retained counsel by the time
their appeal to the supreme court was briefed and argued.

9

could lawfully use the annual report to "urge a yes vote" on the budget or "state that the town needed a new high school for particular reasons."  Id. at 4 (internal quotation marks omitted).  The supreme court therefore affirmed the superior court's ruling on that point.   Id.

About two months after this decision, the state-court plaintiffs--represented by counsel, and joined by Donald Sisson, who is also a member of ERPG--commenced the instant action in this court under 42 U.S.C. § 1983.  They named as defendants the moderator of the Epping school district, the town's superintendent of schools, the principal of Epping Elementary School, and current and former members of the town's school board and board of selectmen, all of whom are sued in their official and individual capacities.  Also named are the school district and the town itself.

The initial federal complaint alleged that the defendants had violated the plaintiffs' federal constitutional rights to free speech and equal protection through a number of actions, including:  (1) distributing the Cool News publication in February and March 2004; (2) distributing other "promotional flyers" in 2004 and 2005; (3) using similar "advocacy mailers . . .

. for at least a decade," from 2001 into the present; (4) placing favorable information about the proposed school addition at the 2005 polls, while the school district's moderator denied the plaintiffs an opportunity to present opposing views in that forum; (5) using a mailing from the town's board of selectmen to advocate in favor of certain warrant articles in the 2004 election; and (6) using a mailing from the town's conservation commission or planning board "to advocate a particular viewpoint in order to obtain an election result favoring their political positions" in each of the 2003 and 2004 elections.   The plaintiffs seek a declaratory judgment that the defendants illegally "creat[ed] fora . . . for the expression of their viewpoints regarding spending, while failing and refusing to allow [the plaintiffs] access to such fora in order to communicate their contrary viewpoints."   The plaintiffs also request compensatory and punitive damages and attorneys' fees.

    The defendants moved to dismiss the initial complaint, arguing that the plaintiffs' claims were barred in their entirety by res judicata and the Rooker-Feldman doctrine as a result of the outcome of the prior state proceedings.   The plaintiffs objected, arguing that these doctrines did not apply because "the

factual transactions at issue in the present case are completely different" from those in the state-court proceedings.  The plaintiffs also announced that, in any event, they intended to amend their complaint to add plaintiffs who were not parties to the state court action, as well as allegations of "one-sided advocacy by the defendants in the 2006 Annual Report--a matter that the plaintiffs could not possibly have raised" before the state courts in 2005.

This court allowed the plaintiffs' proffered amendment over the defendants' protest that it would be futile, pointing out that such an objection would be "better addressed as an amendment to or a new motion to dismiss."  The defendants accordingly revised and refiled their motion to dismiss, arguing that the new plaintiffs--Leo Grimard, Nancy Lee Grimard, and Renee Victoria, who have never been members of ERPG--lacked standing to assert the claims in the amended complaint, and that the new allegations were barred by collateral and judicial estoppel as a result of the state courts' decision—-and the state-court plaintiffs' concession before the supreme court--that pro-spending advocacy in the annual reports was permissible.  The plaintiffs objected

and then, three months later, moved to amend their complaint
again.

This time, the plaintiffs sought to add allegations that, in
2007, the selectmen refused to place a link to ERPG's website on
the town's homepage, yet "allow outside groups whose views the
town favors" to do so, including one known as "Speak Up, Epping."
When ERPG asked the selectmen for similar treatment, they
allegedly asked the group to "provide, among other things,
financial statements and a list of members and officers in order
for the Town to consider" the request, which the plaintiffs say
amounts to harassing and differential treatment on the basis of
their political views.  The proposed amendment adding these
allegations was allowed, this time over the defendants' objection
that they had not denied ERPG the privilege of linking to the
town's website, but had "merely requested information about
[ERPG] prior to placing a link."  Based on this argument, the
defendants now seek to dismiss this claim as unripe for
adjudication.  They have also renewed their arguments for
dismissal of the first amended complaint.

**ANALYSIS**

**I.   Res judicata**

The defendants argue that the plaintiffs' claims--except insofar as they arise out of the 2006 annual report and ERPG's access to the town's website--are barred by the res judicata effect of the judgment against the state-court plaintiffs, and its affirmance, in the New Hampshire courts.  A federal court applies the law of the state whose courts issued the judgment in determining its preclusive effect.  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); Patterson v. Patterson, 306 F.3d 1156, 1158 (1st Cir. 2002).  Under New Hampshire law, the doctrine of res judicata provides that a prior lawsuit precludes a subsequent one when (1) the parties or their privies in both actions are the same, (2) the cases present the same cause of action, and (3) the first action concluded with the issuance of a final judgment on the merits.  Meier v. Town of Littleton, 154 N.H. 340, 341 (2006).  The plaintiffs argue that this lawsuit involves neither the same plaintiffs nor the same cause of action as the state-court proceedings, and that those proceedings did not end with the entry of a final judgment on the merits, so res judicata cannot apply.

14

**A.**   **Same parties or privies, and standing to sue**

The plaintiffs maintain that res judicata cannot apply,
because, as an initial matter, they are not the same parties as
the state-court plaintiffs, who included only Sutliffe and ERPG.
They do not contest, however, that Sisson, by virtue of his
relationship with ERPG, stands in privity with it for res
judicata purposes.  See, e.g., Gen. Foods Corp. v. Mass. Dep't of
Public Health, 648 F.2d 784, 788-89 (1st Cir. 1981) (finding
relationship between trade association and member sufficient to
bind member to judgment against association, in absence of
evidence that member objected to or was not adequately
represented in litigation giving rise to judgment).  The other
plaintiffs here who did not appear in the state-court litigation
are the Grimards and Victoria (the "new plaintiffs"), who allege
"no affiliation" with EPRG.  But the defendants argue that this
gives rise to a different defect--that the new plaintiffs did not
suffer any injury as a result of the challenged actions and
therefore lack standing to bring the claims asserted.

"Article III of the Constitution limits the 'judicial power'
of the United States to the resolution of 'cases' and
'controversies'. . . .  As an incident to the elaboration of this

15

bedrock requirement, [the Supreme] Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471 (1982). So-called "Article III standing," then, "requires that the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," among other elements. <u>Id.</u> at 472 (internal quotation marks omitted). To confer standing, the injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).

The new plaintiffs suggest that they have suffered both actual and threatened injury to their constitutional rights at the hands of the defendants.[7] The second amended complaint,

---

[7] There is authority for "the standing of municipal residents to enjoin the 'illegal use of the moneys of a municipal corporation,' which relies on 'the peculiar relation of the corporate taxpayer to the corporation' to distinguish such a case from the general bar on taxpayer suits." <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 349 (2006) (quoting <u>Massachusetts v. Mellon</u>, 262 U.S. 447, 486-87 (1923)). But the plaintiffs expressly disavow that theory here, arguing that they have standing based on their "<u>free speech rights</u>," rather than the

however, does not allege that the new plaintiffs participated in any of ERPG's efforts to include its views in the defendants' publicly funded communications, or that the new plaintiffs undertook similar efforts on their own behalf.  So the pleading offers no basis for the assertion in the plaintiffs' objection that the defendants "have denied them access" to these fora so as to cause an actual injury.

As the plaintiffs rightly point out, a court faced with a challenge to standing at the pleading stage must "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).  While forgiving, this standard does not require the court to credit "empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts" in the complaint.  Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (internal bracketing and quotation marks omitted).  The factual allegations here not only fail to support the new plaintiffs' claim of actual injury, but undermine it--to dodge the potentially preclusive effect of the

---

expenditure of their tax dollars; in fact, they call DaimlerChrysler "readily distinguishable" on that basis.

state-court judgment against the other plaintiffs, the new plaintiffs expressly disclaim any "affiliation with" ERPG, but only ERPG claims to have been denied access to the public fora in the ways described in the second amended complaint.

The new plaintiffs' argument for threatened injury is no sounder. They assert in their objection that, "just like the other plaintiffs," they "wish to participate in the tax-payer funded fora for the expression of views" described in the second amended complaint, characterizing this intention as "the inescapable implication of the allegations" therein. But, as just discussed, any such desire on the part of the new plaintiffs is hardly apparent from the face of the second amended complaint, which describes only the efforts of ERPG to that end. At oral argument, in fact, the plaintiffs conceded that the second amended complaint does not allege any desire on the part of the new plaintiffs to participate in the fora in question.[8] In any

---

[8] At oral argument, the plaintiffs also suggested that they could simply move to amend their complaint "yet again" to allege the new plaintiffs' desires to this end. Without prejudging the merits of any such motion, this court would expect it to convincingly articulate why the second amended complaint does not itself contain these allegations, given that it was filed after the defendants had already challenged the new plaintiffs' standing.

event, the new plaintiffs' "desires," however laudable, are just

that: desires.  More is required to confer standing.

The Supreme Court has held that "[s]uch 'some day'

intentions--without any description of concrete plans, or indeed

even any specification of <u>when</u> the some day will be--do not

support a finding of the 'actual or imminent' injury" necessary

for standing.  <u>Lujan</u>, 504 U.S. at 564; <u>see also</u> <u>Daggett v. Comm'n</u>

<u>on Governmental Ethics & Election Practices</u>, 205 F.3d 445, 463

(1st Cir. 2000) (ruling that plaintiffs lacked standing to

challenge limits on campaign contributions based on lack of

"specificity about future plans for contributions to display a

real or even a threatened injury").[9]  The new plaintiffs plainly

---

[9]  <u>Osediacsz v. City of Cranston</u>, 414 F.3d 136 (1st Cir. 2006),
on which the plaintiffs heavily rely, does not support their
contrary view that "desires" suffice to confer standing.  As the
court of appeals explained at length in that case, that a party
"desired or intended to undertake activity" can suffice to show
standing <u>only</u> for "certain types of facial challenges to
statutes, ordinances, regulations, or governmental policies . . .
on First Amendment grounds" due to their potential chilling
effect.  <u>Id.</u> at 140-41.  This lawsuit, which seeks relief from
the defendants' alleged practice of excluding competing views
from publicly funded fora, does not present such a facial
challenge (except insofar as it arises out of the alleged refusal
to consider allowing a group to place a link on the town website
without first identifying its members and providing financial and
other information, and that claim, by its nature, belongs only to
a group or its members, not unaffiliated individuals).  <u>Osediacz</u>
is therefore inapposite.

lack standing to challenge the actions chronicled in the second amended complaint.  For res judicata purposes, then, the only proper plaintiffs to this action are the same as (or, in the case of Sisson, in privity with) the state-court plaintiffs who suffered an adverse judgment in that forum.

This action also has additional defendants beyond those sued in the state court:  while they included only the school and select boards and their chairmen, this lawsuit names individual board members, the town, the school district, and certain of its employees (the "new defendants").  The new defendants argue that they can assert res judicata, despite its "same parties" requirement, because they "had their interests represented and protected" by the state-court defendants in that proceeding.  See Waters v. Hedberg, 126 N.H. 546, 549 (1985).  The First Circuit has observed that, because "the application of res judicata . . . in New Hampshire[] is no longer grounded upon mechanical requirements of mutuality," certain non-parties to a judgment may invoke its res judicata effect.  Fiumara v. Fireman's Fund Ins. Cos., 746 F.2d 87, 91-92 (1st Cir. 1984).  These include parties sued for their actions as agents of principals who successfully

defended a prior suit based on their conduct, and who are thus "persons in privity" for res judicata purposes. <u>Id.</u>

Here, the state-court proceedings--though lodged against the boards and their chairmen only--arose out of the actions of the new defendants, including the board members themselves, the superintendent, the moderator, and the principal.[10]  While, as discussed <u>infra</u>, the plaintiffs contend that the superior court did not decide whether each instance of this conduct amounted to a constitutional violation, they do not argue that this fact has any bearing on whether the new defendants--as opposed to the state-court defendants--can seek solace in the state-court judgment.  In fact, the plaintiffs do not dispute that the mutuality requirement of res judicata is satisfied as far as the identity of the defendants is concerned.

---

[10] Conversely, the boards and their chairmen were sued in state court for actions they took on behalf of the school district and the town, so those new defendants are also in privity with the state-court defendants under <u>Fiumara</u>.  <u>See also</u> <u>Garcia v. Village of Mt. Prospect</u>, 360 F.3d 630, 635-37 (7th Cir. 2004) (finding village in privity with village pension board named as defendant to prior action); <u>Kudaroski v. Hellmuth</u>, 31 Fed. R. Serv. 2d 1287, 1289 (D. Mass. 1981) (finding city in privity with officers of municipal foundation named as defendants to prior action), <u>aff'd without op.</u>, 676 F.2d 683 (1st Cir. 1982).

The court concludes that, under New Hampshire res judicata principles as illuminated by the First Circuit, the new defendants can raise the res judicata effect of the state-court proceeding as a defense to this one.  See Town of Seabrook v. New Hampshire, 738 F.2d 10, 11 (1st Cir. 1984) (applying New Hampshire law) (naming officials of state commission as defendants to second suit did not avoid res judicata effect of first suit against commission itself); Burgess v. Bd. of Trs., Univ. of N.H., No. 94-338-JD, 1995 WL 136930, at *8 (D.N.H. Mar. 28, 1995) (naming state university employees as defendants to second suit did not avoid res judicata effect of first suit against university), aff'd, 70 F.3d 110 (1st Cir. 1995) (unpublished opinion).

**B.    Same cause of action/final judgment on the merits**

The plaintiffs also argue that the prior lawsuit has no res judicata effect over the current one because the "cause of action" has changed.  "In determining whether two actions are the same cause of action for purposes of applying res judicata, [New Hampshire] consider[s] whether the alleged causes of action arise out of the same transaction or occurrence."  In re Univ. Sys. Of

N.H. Bd. Of Trs., 146 N.H. 626, 629 (2002) (citing Restatement

(Second) of Judgments § 24 (1982)).  Since the state-court

proceedings dealt only with the statements in the 2004 annual

reports, the plaintiffs argue, they arose out of different

transactions and occurrences from those at issue here, e.g., the

distribution of the Cool News publication and other materials by

the school system, the placement of information supporting the

school addition at the 2005 polls, and the use of mailings by the

board of selectmen and other local boards to advocate for their

views in the 2003-2005 elections, all to the exclusion of the

plaintiffs.  In fact, the plaintiffs point out, they seek no

relief from the 2004 annual reports in this action.

     This argument depends on too narrow a view of both the

state-court proceedings and the "same transaction or occurrence"

requirement of res judicata.  Under New Hampshire law, the

doctrine "bars the relitigation of any issue that was, or might

have been, raised in respect to the subject matter of the prior

litigation . . . .  The claim extinguished includes all rights to

remedies with respect to all or any part of the transaction, or

or series of connected transactions, out of which the [first] action

arose."  Grossman v. Murray, 141 N.H. 265, 269 (1996) (quoting

<u>Dennis v. R.I. Hosp. Trust Nat'l Bank</u>, 744 F.2d 893, 898 (1st Cir. 1984)) (second emphasis added).  Though "'transaction' is not always easy to define with precision," <u>Patterson</u>, 306 F.3d at 1159 (applying New Hampshire law), any practical formulation of the concept is broad enough to include all of the events alleged in the second amended complaint which had occurred by the time of the state-court trial--not just the statements in the 2004 annual reports specifically alleged in the state-court petition.

The <u>Restatement</u>, to which the New Hampshire Supreme Court has frequently looked in shaping its own principles of res judicata, <u>see</u> <u>Patterson</u>, 306 F.3d at 1160, teaches that a "transaction, or series of connected transactions" in this context includes facts sharing "relatedness in time, space, origin, or motivation" and "form[ing] a convenient unit for trial purposes."  <u>Restatement (Second) of Judgments</u> § 24, cmt. *b* (1982).  These characteristics are common to the challenged statements in the 2004 annual report and the various other examples of what the plaintiffs grieve here:  the defendants' use of publicly funded fora to argue their own views at the exclusion of the plaintiffs'.  Indeed, at the superior court trial, the plaintiffs themselves sought to characterize the report as but one symptom of a larger

24

affliction, arguing that their proffered evidence of the other allegedly slanted media showed how they were "denied at all angles from the selectmen, the school committee, from any other planning board or conservation commission."[11]

So the plaintiffs cannot now, through the simple device of omitting any reference to the 2004 annual report from the second amended complaint, turn the statements in the report into a separate "transaction" for res judicata purposes.  This is particularly true when the plaintiffs group all of the defendants' other challenged actions into a unified course of conduct in the second amended complaint, claiming that they "violated the plaintiffs' First and Fourteenth Amendment rights by opening fora for the expression of views on spending through" the particular means described, "while the . . . defendants failed and refused to allow the plaintiffs to express their contrary views regarding spending through such taxpayer funded fora."  The plaintiffs thus allege that the same group of defendants in the same town have repeatedly violated the same rights of the same citizens through multiple instances of similar

---

[11]  In addition, the state-court petition itself complained about advocacy in mailings and "numerous fliers sent home with the students," including--by reference to the letters attached to the petition--the <u>Cool News</u> publication.

conduct; the 2004 annual report does not differ from that conduct
in terms of "time, space, origin, or motivation" in any
meaningful way.  See Restatement (Second) of Judgments § 24 cmt.
d (1982) ("acts which though occurring over a period of time were
substantially of the same sort and similarly motivated . . .
constitute but one transaction or a connected series").

      This court agrees with the defendants that, with two
exceptions,[12] the second amended complaint arises out of the same
"transaction or series of transactions" as did the state-court
action.  See Havercombe v. Dep't of Educ., 250 F.3d 1, 5-6 (1st

---

[12]  The first exception is the 2006 annual report, as to which
the defendants do not assert res judicata, but might have; the
state courts ruled that the state-court defendants had
permissibly advocated their official positions on spending in the
2004 annual report, so they would have been expected to act
accordingly in future reports.  A number of authorities hold
that, "[w]here the object of the first proceeding is to establish
the legality of continuing conduct into the future, a second
action is precluded by the first judgment."  Schneider v. Colegio
de Abagados de P.R., 546 F. Supp. 1251, 1272 (D.P.R. 1982)
(Torruella, J.); see also, e.g., Huck ex rel. Sea Air Shuttle
Corp. v. Dawson, 106 F.3d 45, 49 (3d Cir. 1997); 18 Charles Alan
Wright et al., Federal Practice & Procedure § 4409, at 232 (2d
ed. 2002).  This court need not decide whether res judicata bars
the plaintiffs' claims based on the 2006 report, however, because
those claims are barred by collateral estoppel.  See Part II,
infra.  The second exception is the claim over EPRG's access to
the town's website, as to which the defendants also do not assert
res judicata, but seek to dismiss as unripe.  See Part III,
infra.

Cir. 2001) (ruling that prior action alleging "pattern of
discrimination" barred subsequent action alleging similar
pattern, but over broader period of time, where plaintiff claimed
that "all of these events were directly related to each other in
terms of motivation and common purpose," thus comprising a
"'transaction' or 'series of connected transactions'" under the
Restatement); Waldman v. Village of Kiryas Joel, 207 F.3d 105,
110-11 (2d Cir. 2000) (ruling that prior action claiming
constitutional violations by village involved same "transaction
or series of transactions," under the Restatement, as later suit
where plaintiff "viewed the various components of the overlapping
facts as part of the same pattern of behavior").

     The plaintiffs protest that, because both the superior court
and the supreme court refused to pass on the legality of any of
the defendants' conduct aside from the statements in the 2004
annual report, the "transaction" encompassed by those proceedings
could not have included any of that other behavior.  This
argument confuses the concepts of res judicata--or "claim
preclusion"--and collateral estoppel--or "issue preclusion."  As
the New Hampshire Supreme Court explained long ago:

               There is a difference sometimes overlooked between
          the effect of a judgment as a bar to the

> prosecution of a second action for the same cause,
> and its effect as an estoppel in another suit
> between the same parties upon a different cause of
> action.  In the former case [under res judicata
> principles], a judgment on the merits is an
> absolute bar to a subsequent action: it concludes
> the parties, not only as to every matter which was
> offered and received to sustain or to defeat the
> suit, but also as to <u>any other matter which might
> have been offered for that purpose</u>.  But in the
> latter case [under collateral estoppel
> principles], the judgment in the prior action
> operates as an estoppel only as to those matters
> which were then directly in issue, and either
> admitted by the pleadings or actually tried.

<u>Metcalf v. Gilmore</u>, 63 N.H. 174, 189 (1884) (emphasis added and

bracketed language).  By limiting their decisions to the legality

of the 2004 annual report, then, the state courts did not

likewise limit the res judicata--as opposed to the collateral

estoppel--effect of their judgment.  Indeed, "a subsequent suit

based upon the same cause of action as a prior suit is barred

'even though the plaintiff is prepared in the second action . . .

to present evidence or grounds or theories of the case not

presented in the first action.'"  <u>E. Marine Constr. Corp. v.

First S. Leasing, Ltd.</u>, 129 N.H. 270, 275 (1987) (quoting

<u>Restatement (Second) of Judgments</u> § 25 (1980)).

The plaintiffs' argument--forcefully presented at oral

argument--that the state courts did not issue a "final judgment

on the merits" as to claims based on conduct beyond the 2004 annual report rests on the same misconception.  Under the doctrine of res judicata, "an entire claim may be precluded by a judgment that does not rest on any examination whatever of the substantive rights asserted."  18A Wright, <u>supra</u>, § 4435, at 134. That much is clear from the many decisions of the New Hampshire Supreme Court according res judicata effect to judgments based on a party's default, failure to follow procedural rules, or other reasons having nothing to do with the "merits" of the suit.  <u>See</u>, <u>e.g.</u>, <u>McNair v. McNair</u>, 151 N.H. 343, 353 (2004) (explaining that, while collateral estoppel cannot follow from a default judgment because "none of the issues is actually litigated, . . . [a] default judgment can, however, constitute res judicata with respect to a subsequent litigation involving the same cause of action"); <u>Barton v. Barton</u>, 125 N.H. 433, 434-35 (1984) ("a default judgment entered because of the plaintiff's failure to answer interrogatories operates as a judgment 'on the merits'" for res judicata purposes); <u>Innie v. W & R, Inc.</u>, 116 N.H. 315, 316 (1976) ("The default judgment . . . was a final judgment on the merits . . . .").

Nor is the preclusive effect of the state-court judgment diminished because the plaintiffs there were rebuffed in their efforts to introduce evidence of conduct beyond the 2004 annual report when the superior court ruled that their petition was limited to that particular event.[13]   "It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and application to amend the complaint came too late."  Restatement (Second) of Judgments § 25 cmt. *b* (1980); see also Brzica v. Trs. of Dartmouth Coll., 147 N.H. 443, 455 (2002).  Here, the state-court plaintiffs did not even go so far as to move to amend their petition to seek relief from the defendants' additional conduct.  Res judicata principles "put[] some pressure on the plaintiff to present all his material relevant to the claim in the first action," Restatement (Second)

---

[13]  As the preceding discussion suggests, this narrow reading of the petition is perhaps debatable, because it did at least refer to examples of the defendants' allegedly one-sided advocacy aside from the 2004 annual report.  Regardless, the state-court plaintiffs' remedy from any error by the superior court as to the scope of their petition was to appeal that ruling to the supreme court--which they did, albeit unsuccessfully, when the supreme court determined that they had not preserved their objection. They cannot now seek relief by initiating a second lawsuit independently grieving the conduct the superior court declined to consider.  See ERG, Inc. v. Barnes, 137 N.H. 186, 190 (1993).

of Judgments § 25 cmt. *a* (1982) and, when he or she fails to do so, preclusion of the entire cause of action can follow even though that material, however relevant, was never considered.[14] See, e.g., Fiumara, 746 F.2d at 91-92.

Here, as in Fiumara, "all of the events which define the federal complaint"--again, excepting the 2006 annual report and ERPG's alleged denial of access to the town's website, as to which res judicata has not been raised--"occurred in the period before the state trial and were at least generally hinted at in that trial.  If they were not litigated as hotly as the plaintiff[s] would now wish, they plainly could have been." Id. at 91.  They can be litigated no longer.  The plaintiffs have "already had one bite at the apple, and the choice of the bite was [theirs]." Id. (internal quotation marks omitted).

At oral argument, the plaintiffs emphasized what they perceive as the unfairness of this outcome, pointing out that no court has ever ruled on the constitutionality of a number of the

---

[14]   This can happen even though, as here, a plaintiff did not have the benefit of counsel in the prior proceedings, see, e.g., Cieszwoka v. Gray Line N.Y., 295 F.3d 204, 206 (2d Cir. 2002), so the outcome is yet another testament to the perils of self-representation.  "[A] party who tries his own case is like a man cutting his own hair--in a poor position to appraise what he is doing." Carr v. FTC, 302 F.2d 688, 690 (1st Cir. 1962).

defendants' actions--particularly their sending the allegedly political content of the elementary school newsletter home with its students, which the plaintiffs suggested this court would have no choice but to find unconstitutional if presented with the question.  The plaintiffs also reminded this court of the importance of First Amendment rights in our constitutional system.  But neither the strength of a claim, nor the weight of the rights it seeks to vindicate, can have any effect on the res judicata analysis, because the doctrine "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case," <u>viz.</u>, "that there be an end of litigation."  <u>Federated Dep't Stors, Inc. v. Motie</u>, 452 U.S. 394, 401 (1981) (internal quotation marks omitted).  In that case, the Supreme Court reversed a lower court's refusal to apply res judicata based "on what it viewed as 'simple justice,'" opining, "'simple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied."  <u>Id.</u>

Since the Court's decision in <u>Motie</u>, departure from the body of established res judicata principles "cannot now be justified simply by concluding that it is harsh to deny an apparently valid claim for failure to appeal a wrong decision or other misstep, or

by balancing the values of res judicata against a desire for right outcomes." 18 Wright, supra, § 4415, at 380.  Indeed, this court need look no further than one of its own recent decisions for a particularly forceful example of this reality.  See Est. of Sullivan v. Pepsi-Cola Metro. Bottling Co., 2004 DNH 014.

There, this court ruled that, when the superior court had dismissed the plaintiffs' action for the wrongful death of their teenaged son because their attorney had not filed it until three days after the statute of limitations expired, then denied their motion to add claims with a longer limitations period--a decision which the plaintiffs' attorney did not appeal--New Hampshire res judicata principles barred the plaintiffs from bringing those claims here.  Id. at 3.  This court observed that its order

> result[ed] in the denial of [the plaintiffs']
> claims against the original defendants without any
> determination of whether they are responsible for
> [their son's] death.  The court is sensitive to
> the fact that this outcome may seem unfair to the
> plaintiffs, particularly given the tragic
> circumstances alleged in this case.  This
> decision, however, is dictated by the application
> of long-established rules designed to make the
> judicial process fair to all participants.

Id. at 12.  As the Sullivan decision makes painfully clear, the application of those rules simply cannot depend on how "important" a plaintiff deems his claim to be.  See also

33

<u>Friarton Ests. Corp. v. City of N.Y.</u>, 681 F.2d 150, 158 (2d Cir.
1982) ("it is immaterial that the questions [are] constitutional
in character" for res judicata purposes).  The defendants'
motion to dismiss the plaintiffs' claims insofar as they do not
arise out of the 2006 annual report or the denial of access to
the website is granted on res judicata grounds.[15]


**II.  <u>Collateral estoppel</u>**

The defendants also argue that the plaintiffs' claim
premised on the use of the 2006 annual report for allegedly one-
sided advocacy is barred by collateral and judicial estoppel as
a result of the state courts' decision--and the state-court
plaintiffs' concession at oral argument before the New Hampshire
Supreme Court--that pro-spending advocacy in the 2004 annual
report was permissible.  Because this court concludes that the
state courts' rulings collaterally estop the plaintiffs from the
constitutional challenges to the 2006 annual report launched in
this action, it need not reach the judicial estoppel argument.

As noted previously with respect to res judicata, <u>supra</u>
Part I, New Hampshire's state law doctrine of collateral

---

[15] The court therefore need not reach the defendants' overlapping
<u>Rooker-Feldman</u> argument, or their statute of limitations defense.

34

estoppel is controlling.  See Migra, 465 U.S. at 81; Patterson,

306 F.3d at 1158.  For collateral estoppel to apply, (1) the

issue subject to estoppel must be identical in each action, (2)

the first action must have resolved the issue finally on the

merits, and (3) the party to be estopped must have appeared as a

party in the first action, or be in privity with someone who

did.  Stewart v. Bader, 154 N.H. 75, 80-81 (2006).  This court

has already rejected the plaintiffs' argument that, because they

are differently constituted than the state-court plaintiffs, the

judgment in that system can have no preclusive effect.  See Part

I.A, supra.  The plaintiffs further argue, as also discussed

supra, that the state courts refused to rule on any of the

defendants' conduct but the statements in the 2004 town report,

so the issues here are not identical to those decided there.

    This argument is misplaced.  "The only case a court can

ever try is the one before it, and the application of collateral

estoppel depends not on a party's opportunity to join extraneous

issues for trial in an earlier case, but on the identity of

issues as between actions or suits tried at different times."

Metro. Prop. & Liab. Ins. Co. v. Martin, 132 N.H. 593, 598

(1989).  Thus, because the defendants do not urge collateral

estoppel as to any of the issues presented by the second amended complaint but the constitutionality of the 2006 annual report, the only question is whether the state courts decided that issue in the prior proceedings.  They clearly did.

The superior court rejected the state-court plaintiffs' claim "that the First Amendment . . . prohibits the use of public funds to promote one-sided viewpoints on ballot issues unless the forum also allows opposing viewpoints," ruling that "the government may use public funds to endorse its own measures."  Superior Court Order at 4.  That court also determined that the state-court plaintiffs had not proven that, in "failing to publish opposing viewpoints in the annual report and other mailings," the school board had "established classifications and, therefore, treated similarly situated individuals in a different manner" in violation of the equal protection clause of the Fourteenth Amendment.  Id. at 5.  These conclusions were affirmed on appeal.  Supreme Court Opinion at 4.  So the state courts resolved one of the same issues presented by the second amended complaint here:  whether the school district violated the plaintiffs' First Amendment and equal protection rights by excluding their views on warrant

articles from an annual report, while nevertheless using that
taxpayer-funded communication to promote an opposing view.[16]

The fact that the state courts decided the propriety of the
2004 annual report, while this action challenges the propriety
of the 2006 annual report, does not render the issues dissimilar
for collateral estoppel purposes; that would require the
objectionable nature of the newer report to "differ in [some]
significant respect from the old." Pignons S.A. de Mechanique
v. Polaroid Corp., 701 F.2d 1, 2 (1st Cir. 1983) (Breyer, J.).
There is no reason to believe, even when the allegations of the
second amended complaint are taken as true and augmented with
all reasonable inferences in the plaintiffs' favor, that the
2006 annual report can be distinguished from the 2004 annual
report in any meaningful sense.  The plaintiffs conceded at oral
argument, in fact, that the reports were not different.

"[A] plaintiff cannot avoid the bar of collateral estoppel
simply by suing a defendant for continuing the same conduct that
was found to be lawful in a previous suit brought by the same

---

[16]  There is no indication that the state courts' rulings
depended on the particular nature of the statements in the 2004
report; as just mentioned, the case was resolved on the broader
proposition that the report was a permissible exercise of a
government's ability to use public monies to promote its own
initiatives.

plaintiff." <u>Ramallo Bros. Printing Inc. v. El Dia, Inc.</u>, 490

F.3d 86, 91-92 (1st Cir. 2007) (finding antitrust claim based on

defendant newspaper's latest refusal to carry inserts printed by

plaintiff collaterally estopped by decision upholding

defendant's prior refusal to carry plaintiff's insert on the

same grounds).  By virtue of the unfavorable decisions of the

state courts as to the 2004 annual report, the plaintiffs are

collaterally estopped from challenging the validity of the 2006

annual report.[17]

## III. <u>Ripeness</u>

Finally, the defendants argue that the plaintiffs' claim

arising out of ERPG's access to the town website is not ripe for

adjudication because "[a]t this point in time, the Town . . .

has not denied the organization . . . a link to their website on

the Town's website.  All that has happened is that the Town has

sought information regarding the organization."  The plaintiffs

complain, however, that it is precisely by demanding information

about ERPG's membership and finances as a condition to

---

[17]  This court therefore need not reach the defendants' arguments
that the allegations of the second amended complaint as to the
2006 report fail to state a claim for relief.

considering its request to place the link that the selectmen
have violated the plaintiffs' rights under the First Amendment
and equal protection clause.

The plaintiffs' claim, then, arises not from any outright
denial of ERPG's request to place the link, but from what the
selectmen have allegedly required ERPG to do before they will
even consider its request.  "Determining ripeness requires
evaluation of 'both the fitness of the issues for judicial
decision and the hardship to the parties of withholding court
consideration.'"  Manqual v. Rotger-Sabat, 317 F.3d 45, 59 (1st
Cir. 2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149
(1967)).  The plaintiffs' claim readily meets both of these
criteria.  Because they have been told that ERPG cannot place a
link on the town's website without submitting to what they
consider unconstitutional requirements, their claim in no way
"involves uncertain and contingent events that may not occur as
anticipated or may not occur at all," and resolving it "would be
of practical assistance in setting the underlying controversy to
rest."  Ernst & Young v. Depositors Econ. Protection Corp., 45
F.3d 530, 536-37 (1st Cir. 1995) (internal quotation marks

omitted).  The defendants' motion to dismiss this claim on ripeness grounds is denied.


**CONCLUSION**

For the foregoing reasons, the defendants' motions to dismiss the second amended complaint (document nos. 53 and 55) are GRANTED, except insofar as they seek dismissal of the plaintiffs' claim arising out of the selectmen's alleged refusal to allow EPRG to place a link to its website on the town's home page without first disclosing certain information about its finances and membership.  Because this claim lies against the town and the selectmen only, the remaining defendants--the school district, its moderator and superintendent, the members of the school board, and the principal of the elementary school --are dismissed from the case.  Plaintiffs Leo Grimard, Nancy Lee Grimard, and Renee Victoria are also dismissed from the case, because they lack standing to assert the remaining claim.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


April 4, 2008


40

```
cc:  Charles G. Douglas, III, Esq.
     Benjamin T. King, Esq.
     Charles P. Bauer, Esq.
     Daniel J. Mullen, Esq.
     Diane M. Gorrow, Esq.
```